UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

   Plaintiff,

v.             Case No. 07-CR-168

WAYNE E. PENASS,

   Defendant.

**ORDER GRANTING MOTION TO SUPPRESS**

  On June 27, 2007, a grand jury sitting in Milwaukee, returned an indictment charging Wayne E. Penass with one count of conspiracy to distribute marijuana, contrary to 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(D) and 2, and a second count of possession of marijuana with intent to distribute, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(D). The charges arise out of the interception and search of a United Parcel Service ("UPS") package that was addressed to the Menominee Gas Company in Keshena, Wisconsin. The package was purportedly sent from an entity called Fast Signs in Edinburg, Texas. The case is presently before me on Penass' motion to suppress the marijuana that was found in the package on the ground that the seizure and subsequent search violated his Fourth Amendment rights. For the reasons that follow, the motion will be granted.

**FACTS**

  The facts relating to the search are not in dispute. Michael Sasse, a special agent with the Wisconsin Department of Justice and the sole witness to testify at the hearing on the motion, testified that in early February of 2007 he had received information from Menominee Tribal Officer

David Wynos about suspected drug shipments. Wynos advised Sasse that a confidential informant told him that Penass had been receiving packages of marijuana through the mail at the Menominee Gas Company where he worked, or at some other location. According to Officer Wynos, the informant stated that he believed Penass was wiring money to Texas in payment for the marijuana from a gas station in Shawano. Officer Wynos confirmed that Penass did in fact work at the Menominee Gas Company, but provided no further confirmation. Sasse was familiar with the gas station from which Penass was alleged to have wired money, but did not question the employees because they had been less than cooperative with him in the past. Within the next couple of days, Agent Sasse passed on the information to Dale Nikolay, a supervisor at the UPS Center in Green Bay, and asked Nikolay to be on the look-out for packages from Texas addressed to the Menominee Gas Company.

Approximately three weeks later, on March 9, 2006, at approximately 7:30 a.m., Nikolay left a message on Agent Sasse's telephone to the effect that he had a package for the Menominee Gas Company. When Agent Sasse returned the call, Nikolay informed him that he had opened the package and saw that it contained a brick of what appeared to be marijuana. Sasse then proceeded to the UPS depot where the package was closed and placed on a line with several other packages. A drug detecting canine was then brought in and walked around the packages. When it alerted on the package that Nikolay had previously opened, Sasse took custody of the package and brought it to the Green Bay FBI office. A search warrant was obtained and the package was again opened. Two marijuana bricks were found inside, shrink-wrapped and vacuum sealed. The package was then resealed and delivered to the Menominee Gas Company. Penass was later arrested after he took possession of the package and its contents.

2

**DISCUSSION**

There is no dispute that sealed packages sent through the mail are entitled to full protection under the Fourth Amendment. *United States v. Jacobsen*, 466 U.S. 109, 114, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) ("Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy; warrantless searches of such effects are presumptively unreasonable"). In his motion to suppress, Penass argues that the marijuana found in the UPS package must be suppressed because it was illegally obtained in violation of his Fourth Amendment rights. Penass contends that Nikolay, although an employee of UPS, was acting as an agent of the Government at the time he opened the package and inspected its contents. Since he did so without probable cause and without a warrant, Penass argues that the search was illegal.

Of course, "[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 131 n. 1 (1978). In other words, there must be a showing that "the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." *Id.* at 140. In this context, it is well established that both senders and addressees of packages shipped in the mail or by common carrier have a reasonable expectation that the government will not open them en route. *United States v. Villarreal*, 963 F.2d 770, 774 (5th Cir. 1992). Whether other persons claiming an interest in the package can have a reasonable expectation of privacy in it is less clear. *See United States v. Koenig*, 856 F.2d 843, 846 (7th Cir. 1988) ("Because Graf was neither the sender nor the addressee of the package and thus has no privacy right in it, he therefore has no standing to make the request. On appeal, he fails to point to any other source of a personal privacy interest in Koenig's mail. We need not decide whether a privacy

3

interest could be recognized given proof of an ownership interest in the contents of the parcel and a showing of the ability to control the parcel once delivered.); *but see also United States v. Pitts*, 322 F.3d 449, 457-59 (7th Cir. 2002) (rejecting in *dicta* argument that use of false names to distance recipient and sender from package defeats reasonable expectation of privacy in contents).

In this case, Penass was not the listed addressee of the package containing the marijuana, although it appears obvious he was the intended recipient. Having packages or mail sent to one's workplace, as opposed to one's home, is not uncommon, though normally the address would include the intended recipient's name. So far as the record shows here, Penass' name did not appear on the package. Does this defeat any claim of a reasonable expectation of privacy in the contents of the package? The government does not make that argument here, and so I proceed on the assumption that this element is conceded and consider the merits of Penass' claim that the search and seizure of the package was unlawful.

As to this issue, the government concedes that at the time Nikolay opened the package, he was acting as an agent for the government. Despite this concession, however, the government contends that the search was lawful and the motion to suppress should be denied. The government contends that the information obtained by Officer Wynos from his confidential informant was sufficient to give rise to a reasonable suspicion that the package contained contraband and that Nikolay was therefore justified in initially detaining it. Ignoring the fact that Nikolay, acting as an agent for the government, then opened the package to determine its contents, the government then notes that the alert on the package by the drug detection canine several hours later when Agent Sasse arrived was sufficient to establish the probable cause for the continued detention and issuance of the warrant. Though not explicit, it appears the government's argument is that the unlawful search

4

by Nikolay can be disregarded because there was an independent basis for issuance of the warrant. In essence, the government's argument is that the marijuana would inevitably have been discovered, even if Nikolay had not opened the package, so the motion to suppress should be denied.

I find the Government's argument unpersuasive for two reasons. The first reason is that I do not find from the record before me that there was a sufficient basis to allow the government (remember, the government concedes that Nikolay is acting as an agent for the government) to detain the package and maintain custody until the drug detecting canine arrived.[1] The Government cites *Alabama v. White*, 496 U.S. 325 (1990), for the proposition that an informant's anonymous tip may be sufficient to justify an investigative stop, even though it may be insufficient to support a finding of probable cause for a search. But in *White*, the police received a tip that the suspect would be leaving a particular apartment at a particular time in a particular vehicle and that she would be proceeding to a particular motel while in possession of cocaine. The police corroborated the information they had received by proceeding to the apartment building where they saw the vehicle matching the caller's description, observed White as she left the building and entered the vehicle, and followed her to a point just short of the motel that the caller had identified. *Id.* at 331.

---

[1] It is conceivable that no Fourth Amendment "seizure" of the package even occurred. "[A] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Jacobsen*, 466 U.S. at 113. In the mail context, a seizure occurs "when a package is removed from its ordinary progress in the mail and is diverted for further investigation." *United States v. Smith,* 383 F.3d 700, 704 (8th Cir. 2004). Here, it is unclear whether the package was removed from the ordinary process of delivery so as to interfere with Penass' possessory interests in it before Agent Sasse arrived with the trained canine. In the absence of even a brief investigatory seizure by law enforcement, not even reasonable suspicion is required. 4 LaFave, Wayne R., *Search And Seizure: A Treatise on the Fourth Amendment* §9.8(e), 759 (4th ed. 2004). Because the government concedes a brief investigatory seizure, i.e., detention of the package occurred here, however, I proceed to consider whether the evidence establishes a sufficient basis for it.

5

There they conducted a brief investigatory stop, and the suspect's consensual search of the vehicle led to the discovery of marijuana and cocaine. The court held in that case that the anonymous tip, because it was corroborated by the independent police work, exhibited sufficient indicia of reliability to provide a reasonable basis for the investigatory stop. *Id.* at 332.

Here, by contrast, the information provided by the informant some three weeks earlier was general and unspecific, and no indicia as to the reliability of the informant was offered. As Agent Sasse recounted Officer Wynos' report, his informant told him that Penass was receiving drugs through the mail either at the gas company, where he worked, or somewhere else, and had apparently wired money to Texas in payment. This was insufficient to justify even a brief seizure of every package sent to the Menominee Gas Company from Texas. The additional factors relied upon by the Government, i.e. the fact that it had been sent overnight delivery, the addresses were handwritten, and the contents of the package were dense, do not appreciably add to the analysis since they did not form, as far as the record shows, any part of the basis for Nikolay's decision to detain the package. He relied entirely upon the information Agent Sasse had gotten from Officer Wynos three weeks earlier. That information was simply too vague and general to justify a law enforcement officer's temporary seizure of a package for further investigation.

Of course, even if the information provided by Wynos had been sufficient to justify a brief detention of the package for further investigation, that would be of little help to the government here because that is not what Nikolay did. Nikolay did not set the package aside and wait for Agent Sasse to arrive with the drug detecting canine to see if the dog would alert on it. Instead, acting as an agent of law enforcement, he opened the package to inspect its contents. Since he did so without a warrant, there can be no dispute that this conduct was unlawful and any evidence resulting from

6

it must be suppressed.[2] The government's argument, however, appears to be that since Nikolay could simply have put the package aside to allow Agent Sasse to inspect it, the evidence would have been inevitably discovered. Or, put in terms of the independent source doctrine, the fact that Agent Sasse essentially ignored the fact that Nikolay had already opened the package and obtained a valid warrant on the basis of the trained canine's alert establishes, in the view of the government, an independent source for the evidence. Under either theory, the government appears to contend, suppression of the evidence would be improper.

Both the independent source doctrine and the inevitable discovery doctrine are established exceptions to the exclusionary rule. "The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." *Nix v. Williams*, 467 U.S. 431, 443 (1984). The inevitable discovery doctrine, which is closely related, allows the use of evidence that was illegally obtained if it would inevitably have been discovered even in the absence of the earlier illegality. *Id.* Both are intended to limit "the high social cost of letting persons obviously guilty go unpunished for their crimes," *id.,* which the Court has accepted as the necessary price to ensure that the basic safeguards afforded by the Constitution are respected. They reflect the judgment of the Court that "the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position that they would have been

---

[2]It should be emphasized that Nikolay's actions would have been entirely appropriate, as a constitutional matter, if he had been acting on his own initiative as an employee of UPS. *See, e.g., United States v. Smith*, 383 F.3d at 705 (affirming district court's denial of motion to suppress based on finding that Fed Ex employee who opened package on which drug detection dog had previously alerted in the presence of officer, but absent his instruction to do so, was motivated by desire to insure her employer was not being used as a drug courier and, thus, employee was not an agent of law enforcement)

7

in if no police error or misconduct had occurred." *Id.* Thus, evidence that was obtained, or would have been obtained, even in the absence of the constitutional violation is allowed. But in order for either doctrine to apply, the prosecution must establish by a preponderance of the evidence that the incriminating evidence was, or inevitably would have been, discovered by lawful means. *Id.* at 444.

It is at this point that the second reason for rejecting the government's argument arises. For in addition to failing to establish a reasonable basis for detaining the package, the evidence also fails to demonstrate that the evidence would inevitably been discovered absent the unlawful search. The only witness at the hearing was Agent Sasse, who testified as to what he told Nikolay and what Nikolay told him. What is missing is any evidence that Nikolay would have continued to hold the package and contacted Agent Sasse if he had not first opened it and found marijuana inside. In other words, I am unable to determine on this record that the evidence would have inevitably been discovered even in the absence of the unlawful search. Absent such evidence, I am unable to find that the marijuana would inevitably been found. For this reason, as well, the motion to suppress must be granted.

Finally, even if the evidence was sufficient to establish that obtaining a warrant was inevitable, application of the inevitable discovery rule under these circumstances seems questionable. It appears that Nicolay opened the package before even attempting to reach Agent Sasse. Was it his intent to open all packages shipped to the Menominee Gas Company from Texas and only contact Agent Sasse if he found drugs inside? Such a policy would avoid the extra time and effort needed to obtain a warrant when, contrary to suspicions, there was no contraband inside the package. But it would clearly violate the Fourth Amendment. *See United States v. Echegoyen*, 799 F.2d 1271, 1280 n. 7 (9th Cir.1986) (noting that "to excuse the failure to obtain a warrant

8

merely because the officers had probable cause and could have inevitably obtained a warrant would completely obviate the warrant requirement of the fourth amendment"); *but see also United States v. Goins*, 437 F.3d 644, 650 (7th Cir. 2006) (holding that where police had probable cause to obtain a warrant, "the inevitable discovery doctrine would excuse Byerson opening the gun case prematurely").

In any event, because I find that the government has failed to establish a reasonable basis for detaining the package and that the marijuana would have been inevitably discovered, I conclude that the search was unlawful and the evidence must be suppressed. Accordingly, the motion to suppress is hereby **GRANTED**.

**SO ORDERED** this   12th   day of September, 2007.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge